CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-5737 Kuakini Highway, Suite 102
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 322-3389
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiff
Bodyguard Productions, Inc.,

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Bodyguard Productions, Inc.,<br><br><br><br>                    Plaintiff,<br>   vs.<br><br>MYLES BALDRIDGE and<br>DOE 1, DOE 2, DOE 3, DOE 4,<br>DOE 5 and DOE 6<br><br>               Defendant.<br>_____ | **Case No.: 18-cv-298**<br>(Copyright)<br><br>**COMPLAINT; EXHIBITS 1-3**<br><br>**(1) DIRECT COPYRIGHT INFRINGEMENT**<br><br>**(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |

## COMPLAINT

Plaintiff Bodyguard Productions, Inc. files this Complaint against Defendants

DOE 1, DOE 1a, DOE 2, DOE 3, DOE 4, DOE 5, and DOE 6 (hereafter: "DOES 1-

6") and MYLES BALDRIDGE (collectively: "Defendants") and alleges as follows:

### I.      NATURE OF THE ACTION

1.     This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.     The Plaintiff alleges that Defendants are liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and, (2) contributory copyright infringement.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.     Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.  As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents reside or may be found in this District.

20-011H

### III.   PARTIES

### A.   The Plaintiff, Bodyguard Productions, Inc.

6.     The Plaintiff Bodyguard Productions, Inc. ("Bodyguard") is a corporation organized and existing under the laws of the State of Nevada.

7.     Bodyguard is the owner of the copyright for the motion picture in the Work *"The Hitman's Bodyguard"*, (hereafter: the "Work") a major motion picture released in 2017.

8.     The Work is an action movie directed by Patrick Hughes, and stars Ryan Reynolds as the world's top bodyguard, and Samuel L. Jackson as a hitman and his new client.  The Work tells the story of how the hitman and the bodyguard must put aside their differences and work together so that the hitman can testify at the International Court of Justice.

### F.  The Defendants

9.     Upon information and belief, Defendant MYLES BALDRIDGE is an adult male over 21 years of age and a resident of Maui County.

10.    The Defendants MYLES BALDRIDGE and DOES 1-6 are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is:   SHA1:

3

79C0CB48CD77946FC20AEA3B9F80DE605FD7A06C (the "Unique Hash Number") shown in Exhibit "1".

11.     KIRK BALDRIDGE is the subscriber and operator of the WiFi computer network that provides Internet service at Internet Protocol (IP) address 72.234.136.95 on 2017-11-14 21:57:54 UTC.

12.     Upon information and belief, KIRK BALDRIDGE is an adult male over 21 years of age, a resident of Maui County and the father of Defendant MYLES BALDRIDGE.

13.     The Defendant MYLES BALDRIDGE infringed the Work on 2017-11-14 21:57:54 UTC at IP address 72.234.136.95.

14.     Upon information and belief, Defendant MYLES BALDRIDGE's residence is a stand-alone home with limited neighbors and it is unlikely a third party was able to obtain the consistent access for the observed activity through hacking or any other means making the Defendant MYLES BALDRIDGE occupant and permissive user of the Internet service at IP address 72.234.136.95.

15.     Defendant MYLES BALDRIDGE was confirmed consistently downloading, copying and/or sharing copies of the Work via the Unique Hash Number over 700 times between 11/13/2017 3:43:00 and 12/13/2017 6:31:00 UTC.

16.     Defendant MYLES BALDRIDGE was confirmed downloading, copying and/or sharing copies of the motion picture *Dallas Buyer's Club* via Unique

20-011H

Hash Number F18A60DB02EC3B55C18924F47955DE766DACC537 over 70 times between 4/17/2016 11:21:00 UTC and 4/18/2016 7:39:00 UTC.

17. Defendant MYLES BALDRIDGE was confirmed downloading, copying and/or sharing copies of the motion picture *Criminal* via Unique Hash Number F4450BFCC1E70FD72A13A71BE8CF7B4385053AA2 over 800 times between 7/14/2016 1:58:00 UTC and 8/26/2016 4:10:00 UTC.

18. Defendant MYLES BALDRIDGE was confirmed downloading, copying and/or sharing copies of the motion picture *I am Wrath* via Unique Hash Number 3AF381ACF3160E5B3ADE434F1F52DA32565E7DE2 over 40 times between 1/20/2017 9:12:00 UTC and 1/24/2017 7:22:00 UTC.

19. Defendant MYLES BALDRIDGE was confirmed downloading, copying and/or sharing copies of the motion picture *Playing It Cool* via Unique Hash Number B76DAF0EC9A158F16156D18A026FFF91B7FFA3D2 over 500 times between 5/18/2017 12:29:00 UTC and 6/17/2017 3:24:00 UTC.

20. Plaintiff's agent sent to the ISP of KIRK BALDRIDGE at least 8 notices per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting Defendant to stop the infringement of the Work on 11/15/2017, 11/16/2017, 11/18/2017, 11/19/2017, 11/20/2017, 11/21/2017, 11/22/2017, 11/23/2017, 11/24/2017, 11/27/2017, 11/28/2017, 11/29/2017, 11/30/2017, 12/01/2017, 12/02/2017, 12/03/2017, 12/04/2017, 12/05/2017, 12/06/2017,

20-011H

12/07/2017, 12/08/2017 and 12/11/2017, respectively.

21.     Upon information and belief, the ISP sent these DMCA notices to KIRK BALDRIDGE who received these notices.

22.     Defendant MYLES BALDRIDGE continued to infringe the Work after KIRK BALDRIDGE received all or some of the notices.

23.     Defendant MYLES BALDRIDGE had actual or constructive knowledge of the notices.

24.     Defendant MYLES BALDRIDGE is either a direct or contributory infringer of the Work as more particularly described below.

25.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1-6 are unknown to Plaintiff who therefore sues said Defendants DOES 1-6 by such fictitious names.  Each Defendant DOES 1-6 is known to the Plaintiff only by an Internet Protocol address ("IP address") at which the alleged infringement took place.  An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet. The ISP to which a Defendant subscribes or uses can correlate a Defendant's IP address to a Defendant's true identity.  As shown on Exhibit 1 attached hereto, each of the Defendants' acts of copyright infringement occurred using an IP address traced to a physical address located within this District.  Plaintiff intends to subpoena the ISP that issued the IP addresses in order to learn

20-011H

the identity of the account holders for the IP addresses.  Often the account holder

will be a proper Defendant in this case.  However, further discovery may be

necessary in some circumstances in order to be certain of the identity of the proper

Defendant.  Plaintiff believes that information obtained in discovery will lead to the

identification of each Defendants' true names and permit the Plaintiff to amend this

Complaint to state the same.  Plaintiff further believes that the information obtained

in discovery may lead to the identification of additional infringing parties to be

added to this Complaint as defendants.  Plaintiff will amend this Complaint to

include the proper names and capacities when they have been determined.  Plaintiff

is informed and believes, and based thereon alleges, that each of the fictitiously

named Defendants participated in and are responsible for the acts described in this

Complaint and damages resulting therefrom.

26.    Upon information and belief, Defendants DOE 1 and DOE 1a are the

same individual(s) that used the IP address 66.27.41.251 to infringe the Work.

These individuals also used IP address 66.27.41.251 to infringe the work by a

different unique has number on May 1, 2018 (DOE 1a).

27.    Plaintiff alleges on information and belief that Defendant MYLES

BALDRIDGE either directly or indirectly shared at least a constituent piece of the

Work to each of the Defendants DOES 1-6.

28.    Plaintiff alleges on information and belief that each of the Defendants

20-011H

DOES 1-6 named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged herein, and are liable to Plaintiff for the damages and relief sought herein.

## IV.   JOINDER

29.   Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other; and there are common questions of law and fact.

## V.   FACTUAL BACKGROUND

### A. The Plaintiff Owns the Copyright to the Work

30.   The Plaintiff is the owner of the copyright for the motion picture for the Work entitled "*The Hitman's Bodyguard*", a major motion picture released in 2017.

31.   The Work is the subject of copyright registration (Registration Number PAu 3-844-508) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "2".

32.   The Work is a motion picture which contains original material that is

20-011H

copyrightable subject matter under the laws of the United States.

33.     The motion picture is currently offered for sale in commerce.

34.     Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore a proper copyright notice. *See,* Exhibit "3".

35.     Defendants also had notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

## B. Defendants MYLES BALDRIDGE and DOES 1-6 Used BitTorrent To Infringe the Plaintiffs' Copyright

36.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

37.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous

20-011H

computers).

### *1. Defendant MYLES BALDRIDGE and DOES 1-6 Installed a BitTorrent Client onto his or her Computer*

38.     A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

39.     Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

40.     Defendants MYLES BALDRIDGE and DOES 1-6 installed a BitTorrent Client onto their respective computer.

### *2. The Initial Seed, Torrent, Hash and Tracker*

41.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

42.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

43.     The Client then gives each one of the computer file's pieces, in this

10

case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

44.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

45.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

46.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

47.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

48.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized

20-011H

tracking.)

### 3. Torrent Sites

49.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites.

50.     Upon information and belief, Defendants MYLES BALDRIGE and DOES 1-6 went to a torrent site to upload and download Plaintiff's copyrighted Work.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

51.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

52.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

53.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

54.     In this way, all of the peers and seeders are working together in what is called a "swarm."

20-011H

55.    Here, Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

56.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

57.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

*5. **The Plaintiff's Computer Investigator Identified the Defendants' IP Addresses as Participants in a Swarm That Was Distributing the Plaintiff's Copyrighted Work***

58.    The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's

13

20-011H

copyrighted Work.

59.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

60.     MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Numbers.

61.     The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show that Defendants MYLES BALDRIDGE and DOES 1-6 have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number.

62.     The Defendants' computers used the identified IP address to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

63.     MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

64.     MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were

14

20-011H

identical, strikingly similar or substantially similar.

## VI. FIRST CLAIM FOR RELIEF

### (Copyright Infringement)

65.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

66.     Plaintiff is the copyright owner of the Work which contains an original work of authorship.

67.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendants MYLES BALDRIDGE and DOES 1-6 copied the constituent elements of the registered Work that is original.

68.     The Plaintiff did not authorize, permit, or provide consent to the Defendants MYLES BALDRIDGE and DOES 1-6 to copy, reproduce, redistribute, perform, or display the Work.

69.     As a result of the foregoing, Defendants MYLES BALDRIDGE and DOES 1-6 violated the Plaintiff's exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and

20-011H

501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

70.    Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

71.    By engaging in the infringement alleged in this Complaint, the Defendants deprived not only the producers of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

72.    The Plaintiff has suffered damages that were proximately caused by the Defendants' copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF

### (Contributory Copyright Infringement)

73.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

20-011H

74.     By participating in the BitTorrent swarm with others, Defendants MYLES BALDRIDGE and DOES 1-6 induced, caused or materially contributed to the infringing conduct of others.

75.     Plaintiffs did not authorize, permit, or provide consent to the Defendants MYLES BALDRIDGE and DOES 1-6 inducing, causing, or materially contributing to the infringing conduct of others.

76.     Defendant MYLES BALDRIDGE and DOES 1-6 knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.  Indeed, Defendants MYLES BALDRIDGE and DOES 1-6 directly participated in and therefore materially contributed to others' infringing activities.

77.     The Defendant MYLES BALDRIDGE and DOES 1-6's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

78.     By engaging in the contributory infringement alleged in this Complaint, the Defendants MYLES BALDRIDGE and DOES 1-6  deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local

20-011H

economy.  The Defendant's misconduct therefore offends public policy.

79.    The Plaintiff has suffered damages that were proximately caused by the Defendants contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) permanently enjoin Defendants from continuing to infringe the Plaintiff's copyrighted Work;

(B) order that Defendants delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from each of the computers under Defendant's possession, custody, or control;

(C) order that Defendants delete and permanently remove the copy of the Work Defendants have on the computers under the Defendants' possession, custody, or control;

(D) award the Plaintiff either its actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages per Defendant pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

20-011H

DATED: Kailua-Kona, Hawaii, August 6, 2018.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Plaintiff

20-011Hˉ